Heather M. Lopez (SBN 354022)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: (865) 247-0080
Email: hlopez@milberg.com

*Counsel for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN LOMELI, individually and on behalf of all others similarly situated, *Plaintiff,* v. WHOOP, Inc., a Delaware corporation, *Defendant.* | Case No.: **CLASS ACTION COMPLAINT FOR:** **Violation of 18 U.S.C. § 2710** *et seq.* **Violation of Cal. Civ. Code § 56** *et seq.* **DEMAND FOR JURY TRIAL** |

Plaintiff Steven Lomeli brings this Class Action Complaint and Demand for Jury Trial against WHOOP, Inc. for monitoring consumers' sensitive in-app activities. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief.

## NATURE OF THE ACTION

3. Defendant WHOOP is a health and wellness company. According to Defendant, "We're revolutionizing the way that people understand their bodies. WHOOP provides unprecedented visibility into the relationship between physiology and performance, helping people reach their highest potential physically, mentally, and emotionally."

4. The WHOOP wearable collects an incredible amount of vitals and health metrics and provides personalized guidance for improving one's health. For instance, a WHOOP device measures heart rate, sleep, recovery, and even blood pressure, among others. As Defendant explains, "the WHOOP device and app work together to turn your data into clear, personalized

1 coaching."

2     5. To help consumers understand and improve their health, WHOOP offers a library of educational videos. Consumers can view videos explaining the meaning behind certain vitals (such as a video of explaining heart rate variability as well as explaining typical heart rates) along with guided meditations and breathing exercises to improve stress levels.

    6. The WHOOP app is a treasure trove of personal health information about consumers including their mental and physical well-being. Unbeknownst to consumers, however, WHOOP shares consumer in-app activity and vitals with an undisclosed third-party. That means, WHOOP shares consumers' stress levels, their resting heart rate, vital health indicators, and the titles of videos they viewed, among other information entirely without informing the consumer and seeking their consent.

    7. Accordingly, Plaintiff and the Class bring this Class Action Complaint and Demand for Jury Trial seeking damages under 18 U.S.C. § 2710 *et seq.* and Cal. Civ. Code § 56 *et seq.*

**PARTIES**

    8. Plaintiff Steven Lomeli is a natural person and citizen of the State of California and this District.

    9. Defendant WHOOP, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located at One Kenmore Square, Boston, Massachusetts, 02215.

**JURISDICTION AND VENUE**

    10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

    11. This Court has personal jurisdiction over Defendant because Defendant conducts business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, in a substantial part, in the District.

**DIVISIONAL ASSIGNMENT**

13. Pursuant to Civil Local Rule 3-2(c)–(d), this case should be assigned to the San Francisco Division because Plaintiff resides in this District and a substantial part of the events or omission giving rise to the claim occurred within the county of San Francisco.

**COMMON FACTUAL ALLEGATIONS**

*WHOOP Tracks Sensitive Physiological Indicators 24/7*

14. WHOOP is a health and wellness fitness tracker with "a minimalist, screen-free design" that "auto-detects activity" and "measures the metrics scientifically proven to make the most significant impact on your health."

15. The unique selling point of WHOOP is that consumers don't buy the WHOOP wearable. Instead, the consumers purchase an annual subscription to the WHOOP app and receive a wearable as part of their membership plan.

16. WHOOP offers three tiers of membership: One, Peak, and Life. The memberships subscriptions range from $199 to $359 per year. *See* Figure 1.

**Figure 1**, *showing three tiers of a WHOOP membership.*

17. As shown in Figure 1, the "One" plan collects "Sleep, Strain, & Recovery insights" along with "VO2 MAX & heart rate zones" and "Women's Hormonal Insights." The "Peak" plan collects and analyzes all health data from one "One" plan but also data that reveals the "Healthspan and pace of aging," "Real-time Stress Monitor," and "Health Monitor with health alerts." Finally, the "Life" plan provides consumers with all the features of the "One" and the "Peak" plan plus "Daily Blood Pressure Insights," "Heart Screener with ECG readings," and "On-demand AFib Detection."

18. WHOOP's "Life" plan includes the WHOOP MG device that Defendant touts as its most powerful wearable that provides "medical-grade health and performance insights."

19. It is important to note that consumers do not purchase a WHOOP device. Instead, consumer purchase a membership to use the WHOOP app and each membership tier includes a WHOOP device; consumer cannot purchase a WHOOP device individually.

20. The WHOOP wearable collects an incredible amount of personal data. WHOOP is designed to be worn 24/7 to collect and measure "metrics that have the biggest impact on your health across sleep, strain, stress, recovery, and more."

21. WHOOP automatically measures workouts and "calculates the exertion you put on

your body." WHOOP organizes "how much time you're spending in different heart rate zones during every activity and over time" along with a VO2 which is a measure of an individual's aerobic fitness.

22. WHOOP collects sleep data such as the stages of sleep and "how much sleep you really need based on recent sleep patterns, the strain from the day, sleep debt you've accrued, and any recent naps you've taken." WHOOP analyzes sleep patterns and provides guidance on optimal sleep schedules and organizes the consumer's sleep data into chronological sleep trends.

23. Similarly, "WHOOP calculates your recovery on a scale of 0 to 100% during your sleep, looking at your heart rate variability (HRV), resting heart rate, respiratory rate, SpO2, sleep performance, and skin temperature to see how your body is adapting to physiological and psychological stress."

24. The WHOOP device also measures stress levels. WHOOP explains, "Stress Monitor measures your heart rate and HRV in the moment as an indicator of your physiological response to stress. That reading is compared to your 14-day baseline to calculate a Stress Score between 0 and 3, taking into account any motion to distinguish known stressors, like exercise, from other stressors." *See* Figure 2.

**Figure 2**, *showing the WHOOP "Stress Monitor."*

25. WHOOP promises to help women "understand [their] unique body and cycle" and allows users to "track [their] cycle, log symptoms, and discover how hormonal shifts affect your sleep, recovery, and training." The wearable and app aid women during pregnancy "with personalized guidance and weekly insights to optimize your sleep, hydration, and more." *See* Figure 3.



**_Figure 3:_**_showing the "support your body through pregnancy" page._

26. To help consumers understand and improve their health, WHOOP developed a library of educational video content. For example, WHOOP offers a video called "Understanding Average Heart Rate" that explains the average heart rate metric in the WHOOP app and what it means for the consumer's overall health. *See* Figure 4. WHOOP also provides guided relaxation and breathwork videos such as the videos shown in Figure 5.



**_Figure 4:_** *shows "Understanding Average Heart Rate".*



*Figure 5.* shows sessions to Increase Relaxation and length of the session.

27. WHOOP stores sensitive health information and allows consumers to export their health data to share it with their doctor or other medical professionals. *See* Figure 6.



**Figure 6:** shows users being able to share their health report.

28. The FDA recently issued a warning to WHOOP asserting that its devices are medical devices and therefore should be tested as such.

29. Given the sensitivity of information WHOOP collects, it assures consumer that their data is "private and protected." WHOOP explains, "at WHOOP, your health data—especially reproductive health—is always protected. We never sell your information, and any data used for research is aggregated or de-identified." See Figure 7.

> **Is my data private and protected?**
>
> At WHOOP, your health data—especially reproductive health—is always protected. We never sell your information, and any data used for research is aggregated or de-identified.

**Figure 7**, *explaining consumer data is "always protected."*

30. WHOOP understands that their devices collect an "unprecedented amount of...physiological data" and that "privacy and security are important to" consumers, therefore it published the "WHOOP Privacy Principles" that includes, *inter alia,* the following pledge:

> Our members provide us with an **unprecedented amount of accurate physiological data that is collected by their WHOOP strap**. This information includes heart rate, heart rate variability, sleep duration, respiratory rate, data such as the type of activity engaged in and the duration of physical activity, and any additional information members chose to enter when using WHOOP services (collectively, we call this "wellness data"). **We use aggregated or de-identified wellness data that no longer identifies a particular individual (and is thus no longer personal data) to help answer important questions about human performance and further explore what it means to be optimal.** We believe we have a responsibility to create an ever-better experience for our members by identifying and sharing cutting edge insights. We will always look to provide new content and product features, improve and customize our services (including determining and reporting on trends, sleep, strain and recovery), and develop thought leadership in the area of human performance. We hope your experience with WHOOP will improve over time as our membership base grows and we continue with our mission to unlock human performance. We know privacy and security are important to you. We are committed to making WHOOP the best tool to monitor and understand the body.

***WHOOP Shares In-App Activities and Medical Information***

31. Unbeknownst to consumers (and contrary to WHOOP's representations), however, WHOOP embedded a third-party tracker called Segment into its mobile app that allows Segment to collect consumer data from the WHOOP app.

32. Specifically, WHOOP discloses to Segment personal information on Plaintiff and the Class including their full name, email address, height, weight, birthday, city, gender, username, and information about their mobile devices (such as their phone make, model, operating system, screen size, and their phone carrier's name, among other) (collectively, "PII").

33. Furthermore, WHOOP discloses the consumer's vitals along with the consumer's PII. Segment collects information about the consumer's resting heart rate, max heart rate, minimum heart rate, among others. For example, when viewing the "Stress Monitor" screen, Segment collects the consumer's current stress levels.

34. WHOOP also discloses to Segment the consumer's "Health Monitor" data which is an overview of the consumer's overall health and includes their respiratory rate, blood oxygen levels, resting heart rate, heart rate variability, and skin temperature, and whether those vitals are within (or outside) an acceptable and healthy range. *See* Figure 8.



**Figure 8,** showing the "Health Monitor."

CLASS ACTION

10

COMPLAINT

35. Finally, WHOOP discloses the titles of videos the consumer has watched and/or requested from the WHOOP app including their PII which includes, *inter alia,* their full name and email address.

36. Consumers were never informed that their personal health data and video watching history would be disclosed to an unknown third-party nor did they consent to such a disclosure.

## FACTS SPECIFIC TO PLAINTIFF

***Plaintiff Steven Lomeli***

37. Plaintiff Steven Lomeli purchased a WHOOP membership and has been tracking his vitals with the WHOOP device. Plaintiff opens the WHOOP app daily to view his health information.

38. Plaintiff also viewed videos on the WHOOP app within the last two years.

39. Plaintiff did not know nor consent to WHOOP sharing his sensitive health data and video watching histories with anyone.

## CLASS ACTION ALLEGATIONS

40. **Class Definition**: Plaintiff Steven Lomeli brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of others similarly situated, defined as follows:

> **Nationwide Class:** All residents of the United States who watched a video in the WHOOP mobile app within the last two years.
>
> **California Class:** All California residents who purchased a WHOOP membership.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

41. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has allowed third-parties to collect sensitive health information and video watching histories from consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    A. Whether Defendant is a video tape service provider;

    B. Whether Defendant obtained informed written consent from Plaintiff and the Class to disclose information about them having requested any video or audio-visual material;

    C. Whether Defendant disclosed medical information; and

    D. Whether Defendant obtained written authorization to disclose Plaintiff's and the Class's medical information.

43. **Typicality**: Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendant's misconduct at issue.

44. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

45. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is

impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

46.  Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of 18 U.S.C. § 2710**
**(On behalf of the Nationwide Class)**

47.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48.  Defendant is a video tape service provider per 18 U.S.C. § 2710(a)(4) because it is in the business of rental, sale, or delivery of prerecorded audio-visual material. Specifically, Defendant offers a library of pre-recorded videos in the WHOOP app covering various educational health topics. WHOOP offers its video library to consumers all around the nation, therefore its business affect interstate commerce.

49.  Plaintiff and the Class are consumers per 18 U.S.C. § 2710(a)(1) because they purchased a subscription to WHOOP which includes, *inter alia,* access to WHOOP's video library.

50.  Defendant disclosed the titles of videos that Plaintiff and the Class viewed and/or requested together with their names and email addresses as prohibited by 18 U.S.C. § 2710(b)(1).

51.  Further, Defendant never obtained informed written consent, or any consent whatsoever, from Plaintiff and the Class to disclose a record indicating they viewed or requested a certain video from the WHOOP app.

52.  Plaintiff and the Class seek $2,500 in liquidated damages, punitive damages, attorneys' fees, and litigation fees pursuant to 18 U.S.C. § 2710(c).

**SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. Code § 56 *et seq.***
**(On behalf of the California Class)**

53. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54. Defendant is a provider of health care under Cal. Civ. Code § 56.06(b) because it provides software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or for the diagnosis, treatment, or management of a medical condition.

55. Indeed, the FDA recently classified the WHOOP wearable as a medical device.

56. Defendant's WHOOP app maintains "medical information" as described in Cal. Civ. Code § 56.05(j) because it collects and processes "reproductive or sexual health application information, mental or physical condition, or treatment" on Plaintiff and the Class and contains personally identifying information such as the Plaintiff's and the Class members' full names and email addresses.

57. Indeed, Defendant maintains information on Plaintiff's and the Class members' physical conditions which includes their physical stress levels, workout activities, physical strain, and recovery information, among others. Defendant also collects information about Plaintiff's and the Class members' reproductive health.

58. Defendant violated § 56.06(g) and 56.10(a) for disclosing medical information to Segment without first seeking authorization from the Plaintiff and the Class. No statutory exception applies.

59. Plaintiff and the Class sustained an economic loss. That is, they would not have paid the full value of the WHOOP subscription or would have not purchased a WHOOP subscription had they known Defendant would disclose their medical information. Further, there is significant economic value in their medical information that Defendant capitalized on.

60. As such, Plaintiff and the Class now seek damages in the amount of $1,000, punitive damages, and attorneys' fees. *See* Cal. Civ. Code § 56.35-36.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steven Lomeli individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Steven Lomeli as the representative of the Class, and appointing his counsel as Class Counsel;

(b) An order declaring that Defendants' actions, as set out above, violate the Video Privacy Protection Act and the California Medical Information Act;

(c) An injunction requiring Defendants to cease all unlawful activities;

(d) An award of statutory damages, disgorgement of profits, punitive damages, costs, and attorneys' fees;

(e) Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**STEVEN LOMELI,** individually and on behalf of all others similarly situated,

Dated: August 13, 2025,

By: */s/: Heather Lopez*
Heather M. Lopez (SBN 354022)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: (865) 247-0080
Email: hlopez@milberg.com

*Counsel for Plaintiff and the Proposed Class*