United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN LOMELI,
Plaintiff,

v.

WHOOP, INC., A DELAWARE CORPORATION,,
Defendant.

Case No. 25-cv-06828-MMC

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Before the Court is defendant Whoop, Inc.'s ("Whoop") Motion, filed July 17, 2026, "to Compel Arbitration or in the Alternative to Dismiss Complaint." Plaintiff Steven Lomeli ("Lomeli") has filed opposition, to which defendant has replied. The Court, having read and considered the papers filed in support of and in opposition to the motion, hereby rules as follows.[1]

**BACKGROUND**

Lomeli alleges "Whoop is a health and wellness company" (see Complaint ¶ 3) whose "wearable [device] collects an incredible amount of vitals and health metrics," such as "heart rate, sleep, recovery, and…blood pressure, among others," and "provides personalized guidance for improving one's health" (see id. ¶ 4); additionally, Lomeli alleges, "Whoop offers a library of educational videos," and "[c]onsumers can view videos explaining the meaning behind certain vitals…along with guided meditations and breathing exercises to improve stress levels" (see id. ¶ 5). According to Lomeli, however, Whoop, "unbeknownst to consumers, shares[,]…with an undisclosed third-party[,]"

---

[1] By prior order, the Court took the matter under submission. (See Doc. No. 38.)

consumer "in-app activity and vitals," such as their "stress levels, their resting heart rate, vital health indicators, and the titles of videos they viewed, among other information entirely without informing the consumer and seeking their consent." (See id. ¶ 6.)

Based on the above allegations, Lomeli, on behalf of himself and a putative class, asserts claims alleging violation of the (1) Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 (see id. ¶¶ 47-52); and (2) California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 et seq. (see id. ¶¶ 53-60).

**DISCUSSION**

By the instant motion, Whoop seeks "an order compelling…Lomeli to arbitrate…each and every claim set forth in the Complaint pursuant to the parties' agreement to arbitrate, or, in the alternative, for an order dismissing [p]laintiff's [C]omplaint" (see Doc. No. 32 ("Mot.") at 1:6-9), and to "stay this case pending the resolution of arbitration proceedings" (see id. at 15:25-26).

Pursuant to the Federal Arbitration Act ("FAA"), contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." See 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, a district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts," the court must "enforce the arbitration agreement in accordance with its terms." Id.

**A. Existence of Arbitration Agreement**

"[T]he party seeking to compel arbitration…bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Johnson v.

United States District Court
Northern District of California

Walmart Inc., 57 F.4th 677, 681 (9th Cir. 2023).

Here, Whoop relies on its "Terms of Use" in effect at the time Lomeli, on August 8, 2020, registered for a Whoop membership (see Luizzi Decl. Ex. ¶ 15), which Terms provided in relevant part:

> BY ACCESSING AND USING THE SERVICE IN ANY MANNER, you acknowledge that you have read, understood, and agree to be bound by this Agreement…. If you do not accept this Agreement…, you are not authorized to use the Services.
>
> …
>
> Whoop may modify this Agreement…at any time and such modification will be effective upon posting such change to the Services. Your continued use of the Service following the posting of any changes to this Agreement…constitutes acceptance of those changes.

(See id. Ex. A ("2019 Terms of Use") at 1-2) (capitalization in original).[2]

Subsequently, on May 8, 2025, Whoop posted on its website updated "Terms of Use," which updated terms added an arbitration clause (hereinafter, "Arbitration Agreement") that, in bolded type, provided in relevant part:

> You can decline this agreement to arbitrate by contacting legalnotices@whoop.com within 30 days of first accepting this Agreement and stating that you…decline this arbitration agreement.
>
> …
>
> Any claim, dispute, or controversy (whether in contract, tort or otherwise, whether pre-existing, present or future, and including statutory, consumer protection, common law, intentional tort, injunctive and equitable claims) between you and us arising from or relating in any way to your purchase or use of the Whoop device or services will be resolved exclusively and finally by binding arbitration, unless prohibited by applicable law.

(See id. Ex. C ("May 2025 Terms of Use") at 22.)

The 2025 Terms of Use further provided that "[b]y accessing and using the Service in any manner, you acknowledge that you have read, understood, and agree to be bound

---

[2] Lomeli does not dispute having agreed to Whoop's 2019 Terms of Use. (See Opp. at 3:2-7.)

United States District Court
Northern District of California

by this Agreement." (See id. at 2.)

Shortly after the May 8 posting, Whoop, on May 24, 2025, "sent two courtesy emails to all members to inform them of [the] updated Terms" (see Luizzi Decl. ¶ 21) and to advise them that by continuing to use Whoop, they were agreeing to the updated Terms (see Liuzzi Decl. Ex. D at 1 (stating "[w]e've made updates to our Terms of Use…, effective May 8, 2025," and "by continuing to use WHOOP on or after May 8, 2025, you agree to these updated terms."); see also Liuzzi Decl. Ex. E (stating "[w]e recently emailed you about updates to our Terms of Use…, which were posted to our website on May 8, 2025," and clarifying that "the updated terms apply to your use of WHOOP only going forward, after you received this notice of the changes today") (emphasis in original)). Along with said notice, "[b]oth emails included a hyperlink to the May 2025 Terms for users to review the updates if they wished." (See Luizzi Decl. ¶ 21; see also Luizzi Decl. Exs. D, E (collectively, "May 2025 Notice Emails").)

It is undisputed that Lomeli "opened the [second] email…on May 25, 2025" (see Luizzi Decl. ¶ 22), that he "did not opt out of the May 2025 Terms within 30 days" (see id. ¶ 26),[3] that he "has never deactivated or suspended his account," and that he "continues to use [Whoop's] app" (see id. ¶ 11).

In light of the above circumstances, Whoop contends, Lomeli "agreed to arbitrate his claims under a valid, binding arbitration provision," given that "(1) [he] agreed to the [2019] Terms of Use…, including future modifications, upon purchasing his Whoop Membership; (2) the updated May 2025 Terms included a valid arbitration agreement that

---

[3] In October 2025, Whoop again updated its Terms of Use. (See Luizzi Decl. Ex. F.) Although Lomeli sent an email opting out of the arbitration clause contained therein (see Luizzi Decl. ¶ 30), his reliance thereon is unavailing in light of the following term of use: "If you have previously agreed to a version of this Agreement with an arbitration agreement and did not validly opt out of arbitration then, changes to this Arbitration Agreement do not provide you with a new opportunity to opt out of your previous agreement to arbitration" (id. Ex. F at 29); see Capriole v. Uber Technologies, Inc., 7 F.4th 854, 859 n.2 (9th Cir. 2021) (holding "district court correctly found that [plaintiff] remain[ed] bound by [prior] Agreement and its arbitration provisions because of express language in the [subsequent] agreement providing that any opt-out would not affect pre-existing agreements to arbitration, including the [prior] Agreement").

encompasses this dispute; and (3) [he] did not opt out of the arbitration agreement and continued to use Whoop services after the May 2025 update." (See Mot. at 7:17-8:2.)

In determining whether an arbitration agreement was formed, "federal courts apply ordinary state-law principles that govern the formation of contracts." See Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation and citation omitted).

"Under California law,…the party seeking arbitration bears the burden to show that it provided notice of a new terms of service and that there was mutual assent to the contractual agreement to arbitrate." Ireland-Gordy v. Tile, Inc., 2026 WL 594859, at *2 (9th Cir. March 3, 2026) (internal quotation, citation, and alteration omitted).[4] In that regard, where, as here, the moving party lacks evidence that the other party actually read the terms of the agreement, "an enforceable contract will be found based on an inquiry notice theory" where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022). The Court next considers in turn these two requirements.

As to whether reasonably conspicuous notice is provided, courts evaluate "whether[,] viewed cumulatively—(1) the context of the transaction; (2) the app or website's design and content; and (3) other notices given to users—would have led a

[4] Although the Arbitration Agreement contains a Massachusetts choice of law provision (see May 2025 Terms of Use at 23), the Court applies California law herein to the issue of whether an agreement to arbitrate was formed. See Oberstein v. Live Nation Entertainment, Inc., 60 F.4th 505, 515 (9th Cir. 2023) (holding, in evaluating arbitration agreement, "[a]s California and Massachusetts law apply substantially similar rules, [the court] need not engage in a detailed choice-of-law analysis") (internal quotation and citation omitted); see also Hofman v. Fidelity Brokerage Servs., LLC, 2023 WL 3872564, at *2 n.3 (C.D. Cal. May 8, 2023) (applying California law where "arbitration agreement ha[d] Massachusetts choice-of-law provision"; noting "[t]he [c]ourt need not engage in a detailed choice-of-law analysis…because California and Massachusetts law apply substantially similar rules with respect to the principles of contract law") (internal quotation and citation omitted).

United States District Court
Northern District of California

reasonably prudent user to read the provider's terms of service." See Ireland-Gordy, 2026 WL 594859, at *3 (internal quotations and citations omitted).

Here, "the context of the transaction" between Lomeli and Whoop "favors finding inquiry notice," in that there is no dispute that Lomeli, in the course of his purchase of a Whoop wearable device and obtaining a Whoop membership, "provided an email address during account registration, and should have expected to receive relevant updates there while the account was active," see id., that, "on May 24, 2025, Whoop sent the May Notice Emails to [Lomeli's] email address on record," and that Lomeli "opened the [second] email…on May 25, 2025" (see Luizzi Decl. ¶ 22).

The "design and content" of the May 2025 Notice Emails "also favor finding inquiry notice," see Ireland-Gordy, 2026 WL 594859, at *4, as said emails were "clear and legible" and "provided the updated Terms through a…hyperlink" prominently displayed in the body of both emails, and "[t]he subject line clearly stated that [Whoop] was updating its Terms," see id.; (see also Luizzi Decl. Exs. D, E).[5]

Although the "lack of other notices given by [Whoop] to its users weighs against finding inquiry notice," see Ireland-Gordy, 2026 WL 594859, at *4, such factor is not dispositive, see id. (holding plaintiffs "had inquiry notice" of updated terms based on "context of the transaction" and "design and content" of emails informing users of updated terms, despite "lack of other notices given by [defendant] to its users").

Given such circumstances, the Court finds Whoop, by means of the May 2025 Notice Emails, provided reasonably conspicuous notice of the May 2025 Terms of Use containing the Arbitration Agreement.

Next, as to whether there is an unambiguous manifestation of assent, courts "evaluate whether the outward manifestations of consent would lead a reasonable person

---

[5] Lomeli argues the May 2025 Notice Emails made "no mention of arbitration." (See Opp. at 10:25-26.) "[R]easonable notice," however, "does not require the email to discuss every revision." See Ireland-Gordy, 2026 WL 594859, at *4 (rejecting argument that plaintiff therein lacked notice of arbitration agreement where "email did not say specifically that the arbitration agreement would be updated").

to believe the offeree has assented to the agreement." See Ireland-Gordy, 2026 WL 594859, at *4 (internal quotation and citation omitted). "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." Id. at *2 (internal quotation and citation omitted).

Here, as discussed above, Lomeli opened one of Whoop's May 2025 Notice Emails on May 25, 2025, the day after it was sent (see Luizzi Decl. ¶ 22; id. Ex. E), he did not opt out within the time period specified in the terms (see id. ¶ 26), and he has never deactivated or suspended his account and continues to use the app (see id. ¶ 11). Indeed, it is undisputed that Lomeli has "uploaded data (which requires wearing the Whoop strap) on at least 417 of the 419 days" elapsing between the effective date of the May 2025 Terms and the date the instant motion was filed. (See id. ¶ 27.)

Given such circumstances, the Court finds Lomeli's continued use of Whoop's services after receiving the May 2025 Notice Emails constitutes an unambiguous manifestation of assent to the updated May 2025 Terms of Use. See Ireland-Gordy, 2026 WL 594859, at *2, *4 (holding conduct effective as manifestation of assent where party "has reason to know that the other party may infer from his conduct that he assents"; finding "reasonable provider would understand that a user on inquiry notice who opens and uses the provider's app thereby assents to the provider's updated terms of service").[6]

In light of the above, the Court finds Whoop has carried its burden of proving Lomeli's agreement to arbitrate.

### B. Scope of Agreement

The arbitration agreement here contains a delegation clause, written in broad terms, that provides: "The arbitrator(s) will have exclusive authority to resolve any dispute

[6] Lomeli's argument that the Ninth Circuit, in Jackson v. Amazon.com, Inc., 65 F.4th 1093 (9th Cir. 2023), "rejected Whoop's theory on materially identical facts" (see Opp. at 8:12) is unpersuasive. Jackson is readily distinguishable, in that the defendant therein "did not produce a copy of the…email notifying [recipients] of the new [terms of service], nor did it provide any evidence that [the plaintiff] received such an email," see Jackson, 65 F.4th at 1096, and the district court did not "have other evidence that might allow it to assess notice," see id. at 1100.

relating to arbitrability and/or enforceability of this arbitration provision." (See Luizzi Decl. Ex. C at 22.))

In light of the above delegation clause, the Court does not address herein any potential issue as to whether Lomeli's claims fall within the scope of the Arbitration Agreement. See Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 68 (2019) (holding "[w]hen the parties' contract delegates the arbitrability question to an arbitrator,…a court possesses no power to decide the arbitrability issue").

**CONCLUSION**

For the reasons stated above:

1. To the extent Whoop seeks to compel arbitration, the motion is hereby GRANTED, and the above-titled action is hereby STAYED pending completion of the arbitration proceedings.
2. To the extent Whoop seeks an order dismissing Lomeli's claims on the merits, the motion is hereby DENIED as moot.

**IT IS SO ORDERED.**

Dated: November 5, 2026

MAXINE M. CHESNEY
United States District Judge